IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA ex rel. )
CARL WILLIAMS, )
                                  )
            Petitioner,           )
                                  )
    v.                            )    No. 05 C 6612
                                  )
FRANK SHAW,                       )
                                  )
            Respondent.           )

## MEMORANDUM OPINION AND ORDER

Following a jury trial in the Circuit Court of Cook
County, Illinois, Carl Williams ("Williams") was found guilty
of first degree murder. He was sentenced to 60 years'
incarceration. Williams' conviction and sentence were affirmed
on direct appeal. Post-conviction relief was denied. Williams
timely filed a pro se federal habeas corpus petition raising two
grounds for relief. Williams contends the trial court erred in
its response to a jury question sent during deliberations. He
also contends that his appellate counsel was ineffective for
failing to raise on direct appeal that trial counsel was
ineffective for failing to object to the trial court's ruling
regarding voir dire questions related to "gang prejudice" and for

failing to otherwise pursue voir dire questions about gang
prejudice. Petitioner's contentions are supported by arguments.
Respondent has answered the petition, contending that neither
claim states a basis for relief. Initially, petitioner was
granted until May 8, 2006 to reply to respondent's answer.
Petitioner was subsequently granted lengthy extensions to
August 10 and October 30, 2006. No reply has been filed nor has
petitioner requested a further extension. The issues raised in
the answer will be ruled upon without the benefit of a reply.

Respondent has not provided a trial transcript.[1]
Respondent relies on the underlying facts, description of the
evidence, and posture of the case recited in the opinions of the
Illinois Appellate Court. Those facts are fully consistent with
the allegations and arguments contained in the petition.
Williams did not testify at his trial.[2]

In its final opinion affirming the denial of post-
conviction relief, the Illinois Appellate Court described the
trial evidence as follows:

> The State's evidence at defendant's trial
> established that on April 13, 1994, the victim,

---

[1]Transcripts have been provided covering jury selection
and a question from the jury during deliberations.

[2]Williams was tried with another defendant, but with
separate juries. The other defendant (who was also found guilty)
and a third person accused of the murder (who pleaded guilty) did
not testify in Williams' trial.

Annette Williams, was fatally beaten by members of the Mickey Cobra street gang, who repeatedly struck her with their fists and a baseball bat. Ulinda Smith testified that she was not a gang member, but she sometimes parties with gang members. A police officer's testimony established that Smith was "affiliated" with, but was not a member, of a gang. Smith testified that defendant, also known as "Shorty Carl," came to Annette's 11th floor apartment at Cabrini Green in Chicago where she and Annette were drinking beer. Defendant told Annette that "the brothers" wanted to see her outside the apartment. After Annette and defendant had gone outside and defendant had closed the door, Smith heard Annette pleading, "Don't hit me, what did I do wrong[,] *** don't hit me in the head." Smith heard repeated blows being struck and Annette screaming. According to Smith, the beating continued for about 40 minutes. Defendant and another man then dragged Annette back into the apartment and placed her in the bathroom. Annette was covered with blood, her head had deep gashes, and the left side of her head was swollen to three times its normal size. According to Smith, defendant said to her, "Why don't you help the sister out," and then left. Annette told Smith that she knew she was dying. Smith was unable to stop the bleeding, became frightened, and ran out of the apartment. Annette later died as a result of the injuries. A police gang crimes specialist testified that the infliction of a "pumpkin head" (beating) by gang members is a form of discipline on a gang member who violates the gang's rules.

When the police arrived at the scene in response to a report of a battery, Lieutenant Daniel Dugan saw defendant and Lindsey Bell, whom he recognized as an enforcer for the Mickey Cobras, get out of a car, look at the officers, and then walk in opposite directions. Dugan saw that Bell's jacket had wet, red stains on the sleeve, and there were fresh red droplets of blood on defendant's shoes. After Bell and defendant were detained, defendant tried to run toward a nearby building, but an officer stopped him and placed him in handcuffs. Defendant then

shouted to his mother who had come out of the
apartment building by this time, to get his
sweatshirt from the car he had exited.
Thereafter, the police recovered the sweatshirt,
which contained blood stains consistent with the
victim's blood.

People v. Williams, No. 1-03-0050 at 2-4 (Ill. App. Ct.

1st Dist. Sept. 7, 2004) (unpublished) ("Williams IV")

(provided as Exh. F. to Resp. Answer).

During deliberations, the jury sent the following

handwritten, unsigned note to the trial judge.

Dear Judge Toomin

We need clarification. Several jurors are
concerned that "First Degree Murder" entails
being the actual actor in the crime, i.e [sic]
the Killer. Could you clarify for us. [sic]

Is being at the scene but not inflicting the
blows "First Degree Murder?"

Resp. Exh. I. See also Tr. P-84.

On behalf of Williams, defense counsel argued that the

questions should not be directly answered. He contended that the

jury instruction on accountability that had already been given

was sufficient and, therefore, the jury should simply be told to

rely on the existing instructions. He also objected that the

response was an inappropriate modification of the Illinois

Pattern Instruction that had been given.

The jury had already been instructed:

- 4 -

A person is legally responsible for the conduct of another person when, either before or during the commission of an offense, and with the intent to promote or facilitate the commission of an offense, he knowingly solicits, aids, abets, agrees to aid, or attempts to aid the other person in the planning or commission of an offense.

The word "conduct" includes any criminal act done in furtherance of the planned and intended act.

Jury Instr. 10.

Over defendant's continued objection, the judge responded to the jury as follows:

Jurors, a person who is present at the scene, need not inflict the blows to be guilty of first degree murder. Such person may be legally responsible for the conduct of those who inflict the actual blows if, either before or during the commission of an offense and with the intent to promote or facilitate the commission of an offense, he knowingly solicits, aids, abets, agrees to aid or attempts to aid others in the planning or commission of an offense.

Tr. P-87. See also People v. Williams, No. 1-95-3657 at 2-3 (Ill. App. Ct. 1st Dist. March 31, 1997) (unpublished) ("Williams I").

The record indicates that, five minutes after receiving the response, the jury sent a note stating that they had reached a verdict. Tr. P-88.

Williams contends that the jury's question did not indicate confusion that needed to be clarified, but instead

- 5 -

indicated that some jurors were trying to use the judge to help convince the other jurors. Williams contends that the response improperly directed the jurors toward reaching an agreement to convict.

On direct appeal, the Illinois Appellate Court held that the general rule is that a jury is to be adequately instructed on the law and a jury's questions are generally entitled to a response, but a court has the discretion to decline to answer if the jury instructions are readily understandable and sufficient to explain the relevant law. Williams I, at 3. It also held that a response should not be provided "where the jury's inquiry involves a question of fact, where further instruction would not be useful or might mislead the jury, and where the giving of an answer would cause the court to express an opinion which is likely to direct a verdict." Id. at 4 (citing People v. Reid, 136 Ill. 2d 27, 554 N.E.2d 174, 179-80 (1994)). As to the response provided to Williams' jury, the Illinois Appellate Court found: "The court directly responded to the explicit question of law posed by the jury and reiterated the accountability instruction, consistent with its duty to assist the jury in understanding the law so that it could reach a well-reasoned verdict. In doing so, the court conveyed a correct, pointed statement of the law which was devoid of opinion on or direct

- 6 -

application of the facts of the case . . . ." <u>Id.</u> at 4
(citations omitted).

Respondent contends that petitioner's contention does not
state a basis for federal habeas corpus relief because petitioner
is raising a state law issue, not a constitutional claim. To
the extent petitioner's arguments are construed as raising
constitutional claims, respondent contends the claim is
procedurally defaulted or fails on its merits.

In his present petition, Williams, who is proceeding
<u>pro se</u>, does not expressly cite case law in support of his claim
that the trial judge improperly responded to the jury. The only
case law he presently cites are a few cases relied on by the
Illinois courts that he contends are distinguishable. He does,
however, conclusorily state that this error has resulted in his
"unconstitutional confinement." Petition at 14. This claim is
construed as alleging that Williams was denied his right to due
process and a fair trial, or his Sixth Amendment right to be
tried by a jury.

Williams has procedurally defaulted on this claim if he
failed to fairly present his constitutional claim in state court,
including in his petition for leave to appeal. <u>See</u> <u>Perruquet v.</u>
<u>Briley,</u> 390 F.3d 505, 519-20 (7th Cir. 2004). Since respondent
has not provided a copy of any of the briefs filed on direct
appeal to the Illinois Appellate Court, it cannot presently be

determined whether Williams defaulted at that stage of the litigation.[3] It will only be considered whether Williams defaulted by failing to fairly present a constitutional claim in his petition for leave to appeal to the Illinois Supreme Court.

In deciding whether Williams adequately raised a federal constitutional issue in his petition for leave to appeal, factors to consider include "(1) whether the petitioner relied on federal cases that engage in constitutional analysis; (2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; (3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and (4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation." Perruquet, 390 F.3d at 519-20 (quoting Sweeney v. Carter, 361 F.3d 327, 332 (7th Cir.), cert. denied, 543 U.S. 1020 (2004)).

In his pro se petition for leave to appeal to the Illinois Supreme Court, Williams cited only state cases. That is also true of the opinion of the Illinois Appellate Court. As to the legal principle that a judge's statement to a jury should not improperly direct them toward a factual finding or verdict, none

_____

[3]Respondent relies on the issues as set forth in the Appellate Court's decision on direct appeal. That, however, is not conclusive proof as to the issues raised and cases cited to the Appellate Court.

of the cases cited in either the petition for leave to appeal or
Williams I expressly refer to a constitutional basis for this
principle. All of the cases either cite an earlier Illinois case
or simply state this rule as an obvious proposition of law. None
of the cited cases (or the cases cited in those cases) make clear
the source of this legal rule: whether it is a supervisory rule
for effective administration of trials, one based on Illinois
statutory or constitutional law, or one based on federal
constitutional principles. See, e.g., People v. Childs, 159
Ill. 2d 217, 636 N.E.2d 534, 539 (1994) (citing People v. Reid,
136 Ill. 2d 27, 554 N.E.2d 174, 179-80 (1990) (citing People v.
Charles, 46 Ill. App. 3d 485, 360 N.E.2d 1214, 1217 (3d Dist.
1977) ("We believe any more specific answer or explanation of the
trial judge would have caused the judge to express an opinion and
essentially would probably have directed a verdict of guilty."
[no citation to authority]))); People v. Almendarez, 266 Ill.
App. 3d 639, 639 N.E.2d 619, 626 (1st Dist. 1994), appeals
denied, 158 Ill. 2d 554, 645 N.E.2d 1360 (1994), 159 Ill. 2d 576,
647 N.E.2d 1014 (1995), cert. denied, 514 U.S. 1006 (1995)
(citing People v. Williams, 60 Ill.2d 1, 322 N.E.2d 819, 825-26
(1975) ("the first two questions requested the judge to respond
with a conclusion based on his own evaluation of the evidence"));
People v. Flynn, 172 Ill. App.3d 318, 526 N.E.2d 579, 583 (1st

Dist.), appeal denied, 122 Ill. 2d 583, 530 N.E.2d 255 (1988) (citing Williams, 322 N.E.2d at 825-26).

The reason why the cases generally do not cite the source for the rule is likely that the source is obvious. The rule is obviously based on the trial judge not interfering with the jury's function as a trier of fact. See People v. Sampson, 86 Ill. App. 3d 687, 408 N.E.2d 3, 7-8 (1st Dist. 1980); People v. Tirado, 254 Ill. App. 3d 497, 626 N.E.2d 1114, 1121 (1st Dist. 1993); People v. Bell, 113 Ill. App. 3d 588, 447 N.E.2d 909, 917 (1st Dist. 1983); United States v. Sabetta, 373 F.3d 75, 80 (1st Cir.), cert. denied, 543 U.S. 968 (2004); John A. Decker, Post-Instruction Issues: Jury Deliberations and Verdict, 34 Loy. U. Chi. L.J. 569, 575-76 (2003). When the trial judge improperly directs a jury towards a factual finding or verdict, the judge interferes with the defendant's right to a jury trial. Sabetta, 373 F.3d at 80; Sampson, 408 N.E.2d at 7. That is a right guaranteed by the Sixth Amendment of the Constitution, which is applicable in state criminal proceedings pursuant to the Fourteenth Amendment. Although Williams did not expressly cite the Sixth Amendment to the Illinois Supreme Court nor did the opinion being challenged expressly cite the Sixth Amendment, the argument that a trial judge's statement to a jury improperly directed it toward a factual conclusion is one that so obviously raises issues of a criminal defendant's constitutional right to

have a jury determine guilt that Williams' petition to the
Illinois Supreme Court could be understood as raising a
constitutional claim. It will be assumed that Williams has not
procedurally defaulted this constitutional claim. Even if the
merits are reached, this claim fails.

The legal principles stated by the Illinois Appellate
Court in Williams I are fully consistent with federal
constitutional law. United States ex rel. Cooper v. Ahitow,
1999 WL 258506 *4 (N.D. Ill. April 19, 1999). Compare also
United States v. Mealy, 851 F.2d 890, 901-02 (7th Cir. 1988). In
response to the jury's note, the trial judge essentially restated
the Illinois pattern jury instruction for accountability. There
is no dispute that Illinois' accountability law is accurately
stated. In response to the jury's note, however, the trial judge
modified the general statement of the pattern instruction to make
it particular to the facts of Williams' case. The trial judge
added the phrases "present at the scene" and "those who inflict
the actual blows." That did not direct the jury to make a
particular finding. It was not contested that Williams was
present during the beating nor that others had beaten Annette
Williams. Moreover, the additional instruction still did not
specifically identify Williams as "a person who [was] present at
the scene." Williams complains that the additional instruction
mirrored language of the jury note: "at the scene" and

- 11 -

"inflicting the blows." He contends that responding to people by reflecting their language is a well-known means of reducing tension and thus urging the jurors to reach a verdict of guilt. The Illinois Appellate Court did not find such an undue influence and there is no basis for overturning that finding or holding. Relief will not be granted on this claim.

The other ground for relief raised by Williams concerns whether prospective jurors were properly questioned regarding potential prejudices related to gang members. Evidence presented at trial established that Williams and the others involved in the beating were members of a street gang and that principal prosecution witness Smith was an affiliate of the gang. There was also evidence that the beating was a form of gang discipline being imposed on a gang member or affiliate. During voir dire, Williams' counsel asked the sixth venireperson: "The fact that someone may belong to a street gang or something like that, is that going to affect how you view that person's testimony?" The trial court sustained an objection to the question. Tr. M-106-07. Trial counsel had not asked any of the prior venirepersons about views on gangs or testimony by gang members, nor did he thereafter ask any other venireperson about such views.

On direct appeal, no issue was raised regarding voir dire questioning about gangs. In his pro se petition for post-

conviction relief,[4] Williams raised two ineffective assistance of appellate counsel issues concerning the voir dire. One was that appellate counsel failed to raise on direct appeal that trial counsel was ineffective for failing to dispute the court sustaining an objection to the question about gangs, that is, the claim contained in the federal habeas corpus petition. The second was that appellate counsel failed to raise on direct appeal that the trial court erred in denying voir dire questioning about gangs. In his federal habeas corpus petition, Williams raises only the first issue.

While Williams' conviction was on direct appeal, the First District Illinois Appellate Court decided People v. Jimenez, 284 Ill. App. 3d 908, 672 N.E.2d 914 (1st Dist. 1996), appeal denied, 172 Ill. 2d 559, 679 N.E.2d 383 (1997). In that first degree murder case, the trial court made a pretrial ruling that evidence of gang affiliation would be admissible because there was sufficient evidence that gang affiliation was a motive for the murder charged in the case. Thereafter, the trial court denied defendant's request to ask a voir dire question about giving a fair and impartial trial to a gang member. The Illinois Appellate Court held that this was a ground for reversal.

_____

[4]Respondent has not provided a copy of the post-conviction petition. The issues raised in the petition are gleaned from the various rulings of the trial court and Illinois Appellate Court that are provided.

Jimenez, 672 N.E.2d at 916-17. Jimenez was decided three months before the first brief was filed in Williams' direct appeal. Although decided after Williams' conviction, the law set forth in Jimenez would have been applicable in Williams' direct appeal because Jimenez was decided before Williams' appeal became final. People v. Williams, No. 1-98-1908 at 12 (Ill. App. Ct. 1st Dist. Dec. 24, 2001) (unpublished) ("Williams II") (provided as Exh. D to Resp. Answer).

As previously described, Williams raised two ineffective assistance of appellate counsel issues in his post-conviction petition. Initially, the petition was denied by the trial court on the ground that trial counsel could not have been ineffective because Jimenez was a case of first impression decided after the trial and because appellate counsel's evaluation of the issues could not have been patently erroneous. People v. Williams, No. 94 CR 12363 at 5-6 (Cir. Ct. Cook Cy., Ill. May 8, 1998) (unpublished) (provided as Exh. C to Resp. Answer). In 2000, that decision was affirmed by the Illinois Appellate Court. A copy of this affirmance has not been provided nor are any of the briefs provided. It must be assumed that Williams, proceeding pro se, raised both ineffectiveness issues in this appeal and in his petition to the Illinois Supreme Court, which also is not provided. The Illinois Appellate Court initially affirmed the dismissal on the grounds that the issue had not been properly

- 14 -

preserved in the trial court and appellate counsel could not have been ineffective for failing to raise a waived issue. See Williams II, at 13 (describing the 2000 Illinois Appellate Court ruling).[5] The Illinois Supreme Court, however, remanded the case. The remand order denied the petition for leave to appeal, but further provided: "In the exercise of this Court's supervisory authority, the judgment of the Appellate Court, First District, in People v. Williams, case No. 1-98-1908, is vacated. The appellate court is directed to reconsider its judgment in light of People v. Strain, 194 Ill. 2d 467, 742 N.E.2d 315 (2000)." People v. Williams, 193 Ill. 2d 598, 741 N.E.2d 988 (2001). In Strain gang-related activities were an integral part of the trial. It was held that the trial court had not asked voir dire questions that were sufficient to determine the possible gang-related biases of potential jurors.

On remand to the Illinois Appellate Court for reconsideration in light of Strain, the Illinois Appellate Court held that the post-conviction petition should not have been summarily dismissed and instead an evidentiary hearing was

---

[5]This apparently describes the reason for denying the ineffective assistance of appellate counsel claim based on failing to raise the voir dire issue on appeal. This explanation would not apply to appellate counsel's failure to raise the ineffective assistance of trial counsel issue.

necessary. The Illinois Appellate Court stated:

> Because the supreme court has recognized the
> existence of a potentially strong bias against
> street gangs and held that allowing the questioning
> of prospective jurors is an important right under
> circumstances similar to those in Strain, we find
> that defendant's petition here raised the gist of a
> meritorious constitutional claim in alleging that
> his appellate counsel was ineffective in failing to
> raise this voir dire issue on direct appeal.  . . .
> Additionally, as stated, defendant's appellate
> counsel could have raised the trial court's error
> on direct appeal because the case was not yet
> "final," and his initial appellate brief was not
> yet filed when Jimenez was decided.  Due to the
> importance placed on this issue by Strain, we find
> that the trial court should have conducted an
> evidentiary hearing on defendant's postconviction
> petition which alleged ineffective assistance of
> appellate counsel in failing to raise this error
> during voir dire.

Williams II, at 14.  Williams II did not address the other

ineffectiveness of appellate counsel issue that was based on

ineffectiveness of trial counsel.  Perhaps, it did not consider

that issue because Strain involved a trial court's refusal to ask

certain gang-related questions.  Strain did not involve

ineffective assistance of trial counsel.  In any event, the

remand is clear that it was limited to ineffective assistance of

appellate counsel based on the failure to directly raise the voir

dire issue and that is how the trial court interpreted it.  See

People v. Williams, No. 94 CR 12363 at 1, 11 (Cir. Ct. Cook Cy.,

Ill. Dec. 10, 2002) (unpublished) ("Williams III") (provided as

Exh. E to Resp. Answer).

Williams apparently was represented by appointed counsel for the evidentiary hearing on his post-conviction petition. The only witness to testify was the attorney that had represented Williams on his direct appeal. The trial court found that it had not denied all voir dire questioning regarding gangs, but had simply upheld the objection to one question because it was poorly worded and ambiguous. Williams III, at 11-12. For various reasons, the trial court found that raising the voir dire issue on direct appeal could not have been successful and therefore Williams could not satisfy the prejudice prong of this ineffective assistance of appellate counsel claim. Although previously noting the limited nature of the remand, the trial court also noted at the end of its ruling that there could not have been ineffective assistance of trial counsel because Jimenez was a case of first impression that was not decided until after the trial and trial counsel's failure to ask questions about gang bias should be viewed as trial strategy, not failing to meet an objective standard of reasonableness. Id. at 15-16.

In accordance with the limited nature of the remand as set forth in Williams II, appointed counsel on appeal limited the arguments to the one ineffective assistance of appellate counsel issue, which is not the one Williams has included in his federal habeas corpus petition. In Williams IV, the Illinois Appellate Court notes the conflicting nature of the applicable rules. In

cases involving gang-related evidence, it reads the Illinois cases as providing both that a defendant has a right to question venirepersons about potential bias and that, absent questions from the parties, the court has an independent obligation to offer to ask such questions. Defendant, though, retains the strategic option to choose not to ask voir dire questions about gangs so as to avoid possibly biasing jurors before the trial even begins. Thus, it is not error for the trial court to fail to ask or fail to expressly offer to ask gang-bias questions if defendant indicates, by words or conduct, that he or she did not want such questions asked. The trial court need only provide a sufficient opportunity to ask gang bias questions. See Williams IV, at 15-27.

After a discussion of the case law, the Illinois Appellate Court generally rejected the trial court's reasons for denying the petition on remand. See id. at 27-29. It did agree with the trial court's finding that the court had sustained an objection to one improperly phrased voir dire question, but had not precluded questioning regarding gang bias. It further held that defendant's conduct (through counsel) sufficiently indicated that he did not desire to ask questions about gang bias. Therefore, there was no error in prohibiting or failing to ask gang-bias voir dire questions and therefore raising the issue on appeal would have been unsuccessful. Id. at 29-30. The

prejudice component of ineffective assistance of appellate counsel could not be satisfied. Id. at 30-31.

The same appointed attorney that represented Williams in Williams IV, represented Williams on his petition for leave to appeal to the Illinois Supreme Court. Consistent with Williams II and Williams IV, the petition for leave to appeal is limited to appellate counsel being ineffective for failing to raise the voir dire issue on direct appeal. Leave to appeal was denied.

Respondent contends the ineffective assistance of appellate counsel issue that Williams presently raises is procedurally defaulted because not raised in Williams IV or the petition for leave to appeal that followed. Williams contends that his appointed attorney was ineffective for limiting the grounds raised in Williams IV. However, since there is no right to counsel in post-conviction proceedings, the representation in Williams IV cannot be a cause for the default. Howard v. Sullivan, 185 F.2d 721, 725 (7th Cir. 1999). In any event, that representation was not ineffective and, more importantly, the record before the court does not support that a procedural default occurred. As is discussed above, Williams II limited the remand to the one issue of ineffective assistance of appellate counsel. Post-conviction appellate counsel, therefore, was simply following the order of the appellate court. That cannot be construed as ineffective assistance. The ineffective

- 19 -

assistance of appellate counsel claim that Williams raises in his
federal habeas corpus petition was included in his post-
conviction petition, raised and rejected on the initial post-
conviction appeal, and apparently then raised in the initial
petition for leave to appeal that was denied in 2001.[6]  Thus, the
issue was adequately raised at each level at that time and was
finally resolved by the 2001 denial of leave to appeal.  The
proceedings that occurred thereafter were limited to a different
issue.  On the record presently before the court, it can only be
assumed that plaintiff fully and adequately exhausted the claim
that appellate counsel on direct appeal was ineffective for
failing to raise in the appeal that trial counsel was ineffective
for failing to pursue the voir dire issue.

        As to the merits of the claim, respondent's answer
generally does not address them.  In the event that Williams'
present federal petition is broadly construed or an amendment
attempted, respondent does argue the merits of the ineffective
assistance of counsel claim that was decided in Williams IV.
Williams, however, has not sought to pursue that claim here.  The
only argument that respondent presently makes that bears on the
merits of the ineffective assistance of appellate counsel issue

_____

        [6]As previously set forth, respondent has not provided the
briefs or appellate court opinion in these proceedings so it is
being assumed that the issue was raised at all levels of these
proceedings.  Respondent does not contend otherwise.

actually raised by Williams[7] is that the evidence against Williams was so overwhelming that he could not have been prejudiced by trial counsel's failure to further push to ask the gang bias question.

To succeed on his claim, Williams must show that appellate counsel was ineffective in that the failure to raise an issue on direct appeal fell below an objective standard of reasonableness and that he was prejudiced by failing to raise the issue on direct appeal. <u>Martin v. Evans</u>, 384 F.3d 848, 851 (7th Cir. 2004); <u>Lee v. Davis</u>, 328 F.3d 896, 900 (7th Cir. 2003). In order to satisfy this prejudice prong, Williams must show that there was a reasonable probability that raising the issue on direct appeal would have affected the outcome of his appeal. <u>Lee</u>, 328 F.3d at 901. That would require that Williams had a meritorious claim of ineffective assistance of counsel to raise on direct appeal. In turn, that would require that trial counsel's performance at voir dire fell below an objective standard of reasonableness and that Williams was prejudiced at trial in that there is a reasonable probability that counsel's

---

[7]Respondent does not contend (as the trial court stated in <u>dictum</u> in <u>Williams III</u>, at 15-16) that counsel was not ineffective because he made a strategic decision not to ask further questions about gangs. <u>See, e.g.</u>, <u>United States ex rel. Williams v. Bowen</u>, 2005 WL 3299231 *9 (N.D. Ill. Nov. 29, 2005).

deficient performance affected the outcome of the trial. <u>Martin</u>, 384 F.3d at 852.

Assuming trial counsel's performance was deficient for not further pursuing questions about gang-bias, it cannot be presumed that Williams was therefore prejudiced by trial counsel's deficient performance. Williams still must show he was prejudiced by his counsel's ineffectiveness during voir dire. <u>See</u> <u>Robertson v. Hanks</u>, 140 F.3d 707, 711 (7th Cir.), <u>cert. denied</u>, 525 U.S. 881 (1998). Moreover, because Williams' claim is one for ineffectiveness of appellate counsel on direct appeal, appellate counsel must have been able to have shown prejudice based on the record available on appeal. Williams did not directly raise an ineffective assistance of trial counsel claim in his post-conviction proceeding, which may have permitted an expansion of the record. Any claim that is preserved for federal habeas corpus relief must rely on the record available from the trial to show ineffective assistance of trial counsel.

In evaluating whether a failure to pursue voir dire questions about potential biases of a venire prejudiced a criminal defendant, various factors may be considered. In the present case, factors to consider would include: the importance of testimony by gang members or affiliates to the case as a whole; whether any gang member's credibility was put at issue by testifying and whether his or her testimony was corroborated by

persons not affiliated with gangs; the extent to which evidence
about gangs permeated the trial; and whether venirepersons'
attitudes toward gangs were addressed by other questions or
covered by jury instructions. Cf. United States v. Gelb, 881
F.2d 1155, (2d Cir.), cert. denied, 493 U.S. 994 (1989) (quoting
United States v. Baldwin, 607 F.2d 1295, 1298 (9th Cir. 1979))
(factors to consider when evaluating prejudice from not asking
voir dire questions about testimony from law enforcement
officers). Cf. also Butler v. City of Comden, 352 F.3d 811, 818
(3d Cir. 2003) (applying same analysis in civil case). Another
consideration is how much of the evidence consisted of inferences
to be drawn from essentially uncontested facts. Cf. United
States v. Alarape, 969 F.2d 349, 351-52 (7th Cir. 1992) (it was
not error to exclude voir dire questions about government agent
testimony where "the case turned on inferences from uncontested
facts . . . rather than on the outcome of a swearing contest").
The strength of the evidence of guilt would also be an important
consideration. See Thompson v. Battaglia, 458 F.3d 614, 618-19
(7th Cir. 2006); United States v. Birk, 453 F.3d 893, 899 (7th
Cir. 2006).

        As stated in Williams II, at 11, "much of the testimony
presented at defendant's trial involved gangs or gang-related
activity." There was, however, apparently no gang member and
only one gang-affiliated person who testified at trial, Ulinda

                                - 23 -

Smith.  She was the central prosecution witness in the case.
Jurors being biased against testimony of a gang affiliate would
have benefitted Williams.  More important than the possible
effect of any gang-bias on viewing the credibility of a witness,
though, was whether a juror would have been prone to bias against
Williams because he was a gang member and the murder, according
to the prosecution's theory, was an act of gang discipline
committed with other gang members.  Potentially, gang-bias of
jury members could have been important in the case.

Probing about gang bias during voir dire has been said to
have potential to inspire such bias.  See Gardner v. Barnett,
199 F.3d 915, 921 (7th Cir. 1999) (en banc), cert. denied,
529 U.S. 1079 (2000).  The Seventh Circuit has also indicated a
voir dire inquiry into possible streat gan bias is not a
constitutional right.  Id.; Williams v. Bowen, 2005 WL 3299231
at *6.

The nature of the evidence in this case, moreover, does
not support a reasonable probability that not questioning the
venire about gang bias affected the outcome of the trial.
Smith's testimony was not disputed.  The jury had to draw
inferences from Smith's uncontested testimony about what she saw
and heard, which did not include seeing the actual beating.
While a person who was unduly biased against gang members would
be more prone to draw negative inferences, any reasonable person
would infer that Williams directly participated in or was

- 24 -

otherwise accountable for the beating. Williams was the one who came in to get Annette Williams and he was one of the people who brought her back in the apartment immediately thereafter. The beating was lengthy and involved much screaming. There was also corroborating evidence of substantial blood on Williams' clothing. Such evidence does not suggest or imply an out of the ordinary bias against gang members in order to infer Williams was a willing participant in the beating. The evidence that would have been available to support an argument on direct appeal would not have supported that there was a reasonable probability of a different outcome had trial counsel further pursued the gang-bias voir dire issue. Williams' ineffective assistance of counsel claim does not state a basis for relief.

For the foregoing reasons, the petition for habeas corpus relief will be denied.

IT IS THEREFORE ORDERED that the petition for writ of habeas corpus is denied. The Clerk of the Court is directed to enter judgment in favor of respondent and against petitioner denying the petition for writ of habeas corpus. If petitioner wishes to appeal this order, he must file a Notice of Appeal to the United States Court of Appeals for the Seventh Circuit with the Clerk of the Court, United States District Court for the Northern District of Illinois, 219 South Dearborn Street, 20th Floor, Chicago, Illinois 60604, within thirty (30) days of

the entry of the judgment in this case. Any notice of appeal should also be accompanied by a request for a certificate of appealability from this court, including a statement as to why a certificate should issue. See 28 U.S.C. § 2253; Fed. R. App. P. 22(b).

ENTER:

UNITED STATES DISTRICT JUDGE

DATED: DECEMBER  15  , 2006